Argument not to exceed 15 minutes per side. Mr. Harawa, Ms. Bozeski, Mr. Bartley, you may proceed for the appellate. Thank you. Good afternoon, Your Honors. I may please the Court. Daniel Scott Harawa on behalf of John Lowery. It's my pleasure today, actually, to introduce recent graduates of NYU Law, Katie Svatsky and Brendan Bartley, who will be arguing the supervision. All right. Very well. You all can just let us know what your respective areas of coverage are and how much time for each of you. Yes, Your Honor. I may please the Court. My name is Katie Svatsky. I'll be arguing for 10 minutes and we're reserving five for rebuttal. Okay. So you're going to do the rebuttal. So you're going to be one shot up here. Correct, Your Honor. That's great. Okay. Good afternoon. Your Honors, Mr. Lowery has been incarcerated for 25 years in a case that had no physical evidence, no forensic evidence, no video surveillance footage. The government's case rested on two eyewitnesses who identified Mr. Lowery as the shooter. But those two men now say the police coerced them into identifying him and Mr. Lowery has produced a new credible witness who undercuts the government's case and says Mr. Lowery was not at the scene of the crime. A fair review of the facts shows Mr. Lowery has produced new credible evidence sufficient to pass through the Innocence Gateway and this Court should reverse to allow consideration of his constitutional claims or in the alternative for a hearing on the reliability of the evidence. So is it your position that the only evidence used to convict Mr. Lowery was the testimony of Mr. Boatwright and Mr. Hardin? Your Honor, Mr. Boatwright and Mr. Hardin were the only two people to identify Mr. Lowery as the shooter. In total, the government had four witnesses who testified as to the shooter's identity and motive. Two of them were Mr. Boatwright and Mr. Hardin who have now recanted. There was a witness, Ms. Santos, who testified to an alternative, perhaps contradictory motive theory, and a fourth witness who was so recalcitrant, so reluctant, he had to be impeached on the stand and it's unclear what the jury actually took away from his testimony. Now, I want to address Ms. Turner's testimony first because the government dismisses her as cumulative and says its case didn't rely on Mr. Lowery being in the store. In fact, both Mr. Boatwright and Mr. Hardin's testimony rested on Mr. Lowery being the same person Mr. Boatwright had an altercation with. It was dark pre-dawn outside. Mr. Boatwright, before you go down completely into the facts, can we talk just a moment about the standard of review? I know that this is ultimately de novo, but what standard applies to our review of the state court's factual findings and credibility determinations? Your Honor, so this court would review the district court's deference to the state court, which in this case was completely inappropriate because the state court's findings were unsupported and contradicted by the record. Well, what is the standard? It's the reasonable jurist's standard, Your Honor, and no reasonable jurist could come to the conclusion that the state court came to about what came out in its opinion. What about subsection E1 of 2254? Doesn't that require that in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. Is that the standard that you're addressing? Your Honor, certainly even if that is the standard, we have rebutted the presumption of correctness. You're being asked whether it is the standard first. Your Honor, yes, that's what the statute says. However, the state court's findings are not supported by anything in the record. In fact, they're completely rebutted. The state court issued an opinion that was 203 words that was issued 18 months after the finding. It misspelled Mr. Boatwright's name. And on top of all of that, its findings are completely contradicted by the transcript. It said that Mr. Boatwright couldn't get straight whether he was being charged with murder or threatened with charges of murder or armed robbery. In fact, Mr. Boatwright was completely consistent. Mr. Boatwright testified that first he was threatened with armed robbery charges. When that didn't work, the police upped it to murder. And then the state court said that Mr. Hardin did not give any reasons for his change in testimony. Well, that's not true either. In fact, Mr. Hardin gave two. The first is that he spent a lot of time in the prison law library, and he learned that the techniques used on him were coercive. I mean, he was handcuffed as a 16-year-old without his parents. What do we do with the fact that someone else helped to write his jailhouse lawyer, helped to write his affidavit? I mean, how does that go as it relates to his reliability and credibility? Your Honor, that's not at all unusual for a lay witness. Affidavits are often prepared by some kind of legal professional, including perhaps a jailhouse lawyer. What's important here is that Mr. Hardin did not blindly accept that And moreover, both Mr. Hardin and Mr. Boatwright not just submitted an affidavit and said, well, that's that. Both of them came to court, they took the stand, they raised their hand, they swore an oath, and they opened themselves up to cross-examination. That was true in the first trial as well, right? Yes, Your Honor, that was true in the first trial as well. I mean, recantations are quite common in habeas cases. I mean, you know, we see them as often as not when we're applying the sort of actual innocence type standard that we must apply here. And I'm wondering why these aren't actually relatively weak recantations rather than relatively strong. I mean, we have one person who is likely going to be in the penitentiary with Mr. Lowery for decades to come. And we have another who shortly before his recantation shared a ride in a prison van, as I understand it. And it was shortly after that that he, you know, long after the crime, he recant. So, I mean, why wouldn't a reasonable fact finder just as easily infer that the coercion here actually is emanating from Mr. Lowery? Well, Your Honor, just to correct the record, because I do think the district court gets it wrong on Mr. Boatwright. He was not actually incarcerated with Mr. Lowery at the time of his recantation. The state also gets this wrong in its brief because the affidavit says Morgan County, but Mr. Boatwright testified that he was actually incarcerated in South Central. And when you look at the stamp of the notary, it's Wayne County. That's where South Central is located. So he had a great deal of distance between him and Mr. Lowery. Are they in the same facility now? They were in the same facility at some point. It's unclear where they are now. However, what's really crucial here is that the third witness, Ms. Turner, her testimony actually lends a great deal of credibility to these recantations and completely undermines their testimony at trial. Completely? I mean, Ms. Turner's testimony is indisputably new, indisputably reliable. She says Mr. Lowery was not in that store. So essentially what the government is asking us to believe... Is she saying that he wasn't in the store or she didn't see him in the store? Your Honor, it's a rather small store. She was on high alert because there was a group of men making a ruckus. She saw that altercation. But which one... I mean, I'm interested to an answer to Judge Strange's question. What did she say? That he wasn't in the store or that she didn't see him in the store? I believe she said he was not in the store that way. She did not see him in the store that morning and she saw everyone who was in the store that morning because it's a small store. There were eight people. She looked at the men having the altercation. Did it make a difference that she ducked behind the counter when the shooting started? No, Your Honor, because this is not about the moment of the shooting. This is about the preceding moment where Mr. Boatwright says, the man who shot me is the man I argued with. And what the state wants us to believe is that Mr. Boatwright and Mr. Hardin are being truthful and credible... Well, the state... What we have to believe to credit the state's case is that Mr. Boatwright and Mr. Hardin were wrong or mistaken or lying when they said that Mr. Boatwright was arguing with Mr. Lowry in the store and that they were so truthful and so credible when they said that just a few minutes later Mr. Lowry shot Mr. Boatwright that a jury could convict beyond a reasonable doubt. And, Your Honors, that simply does not add up. In your view, is there any dispute as to whether Boatwright was, when he comes to the store that morning, is there any dispute that he was driving the vehicle stolen from Mr. Lowry? Yes, Your Honor. In fact, there is nothing in the record to suggest it was Mr. Lowry's vehicle. We would posit it's not. It was a stolen vehicle, but we know that Mr. Boatwright and Mr. Hartzell robbed several other people who were at Kirk's Market that morning. They robbed Mr. Greg Moore. They robbed Mr. J. Harris. In fact, they were charged with those robberies, and those charges weren't dropped until well after the state court had affirmed Mr. Lowry's conviction. In fact, they were never charged with robbing Mr. Lowry. What role does his brother, Fred Lowry, play in this, who evidently looked a great deal like him? He did, and Mr. Fred Lowry testified at trial that he was the one who had the altercation with Mr. Boatwright inside the store. So really, Ms. Turner's state had to discredit Mr. Lowry's trial witnesses was that they were friends and family, and they can't do that to Ms. Turner, and that's why her testimony is so important. You complain about not getting an evidentiary hearing in the district court. Why is an evidentiary hearing needed here where we have the evidentiary hearing in state court, and we also have the affidavit, so what more would you be trying to get from an evidentiary hearing? Yes, Your Honor, I'll answer your question. So, Your Honors, an evidentiary hearing is crucial because perhaps realizing that the Quorum Novus Court's findings are completely contradicted by the record, the district court actually made its own findings on a cold record and adversely resolved credibility determinations without this hearing. This court in Yeager said that you can't resolve credibility findings adversely without holding that kind of hearing, and I would actually point the court to Anne Marie Bowersox, which has a very similar situation and really points to why a hearing is needed to resolve these, before resolving credibility findings adversely, and for those reasons, we would ask this court to reverse and remand. Very well. Thank you. You'll have your rebuttal. We'll hear from the state. May it please the court. Good afternoon, Your Honors. My name is Zachary Barker, and I represent Warden Mike Paris. Federal habeas corpus petitioners cannot open the actual innocence gateway with untruthful recantation testimony and new testimony that is of little weight and cumulative. This court should affirm the district court's decision dismissing the untimely federal habeas corpus petition because petitioner has failed to meet the actual innocence exception to the statute of limitations. Let me ask you first about your argument that Lowry didn't properly request an evidentiary hearing in the district court and has waived that argument on appeal. I'm not seeing that. It seems to me that as a pro se petitioner, he raised the issue, he requested an evidentiary hearing in his memorandum, and again, when the case was back in the district court. Is that an issue that matters here? Yes, Your Honor, it is an issue that matters here. For the evidentiary hearing, the only thing that Mr. Lowry included in his memorandum was a final sentence requesting three separate things, one of which was discovery, another of which was an evidentiary hearing, another of which was the ability to amend his petition. None of those three occurred, and he made no further request for an evidentiary hearing, even after this court earlier in the proceedings remanded this case back to the state court for another determination, back to the district court. But when it came back after that remand, didn't he again request an evidentiary hearing? I mean, I've got a 1551 page cite and record 30. Your Honor, I'm not aware that he requested an evidentiary hearing or made a motion for an evidentiary hearing at that time. And an evidentiary hearing in a federal habeas corpus proceeding under E2 of section 2254 is something that has a separate and distinct analysis that must be done beyond just looking at the actual innocence exception pursuant to Schlup and McQuiggan in this case. That determination was never made by the district court. There was never any analysis about whether an evidentiary hearing should occur. And the petitioner, Mr. Lowry, never argued those factors or that an evidentiary hearing should have taken place. So our position, once again, is that that was waived because Mr. Lowry did not make a sufficient request for an evidentiary hearing at the district court level. So you don't, I mean, you did, you're not saying he didn't make a request. You said you're not aware that he made a request. So are you saying, are you sort of maybe not disputing that he made a request, but somehow that request was insufficient? Your Honor, that request may have been tagged to the last line of one of his filings and be somewhere in one of those filings. Like his pro se filing that we're supposed to construe liberally? Yes, Your Honor. But even though we're construing those filings liberally, at the time that he was asking for an evidentiary hearing, he asked for other things as well and took no action toward getting those things or his evidentiary hearing. There's, as you're aware in federal habeas cases, in the last line of petitions, requests for evidentiary hearings all the time that never occur because there is no further step and no further analysis by the district court of whether an evidentiary hearing should occur. But the question here is whether he waived this argument. And a pro se petitioner makes a request and, you know, sure doesn't develop the argument like a lawyer would, but why would we treat that as waived? I mean, the person asked for it. He's pro se. The court can brush it off if it wants. But why can't, now that he has counsel, why can't he make an argument here? Your Honor, once again, our position is that it was waived, but there are two further reasons why an evidentiary hearing should not occur in this case. One is that it is not within the scope of the certificate of appealability that was put before this court. The district court granted the certificate of appealability only on the actual innocence gateway issue, not whether an evidentiary hearing should have occurred to assess the credibility of the witnesses. Furthermore, when this court reviewed that certificate of appealability to determine whether it should be expanded, this court made no decision that it should be expanded to encompass an evidentiary hearing, but rather proceeded only on the certificate of appealability that was granted by the district court. Furthermore, yes? This is probably more pertinent to the information I would like to hear from you. It has to do with Loretta Turner's testimony. I find it really problematic that that information was withheld. Tell me how that error, that failure to provide that information occurred. Your Honor, I don't know anything about the specifics of the police officers in this case and how that information may or may not have been transmitted to the defense team at the trial level. That is not something that goes toward her credibility in this case and the determination of whether... It's not about her credibility. It's about whether he has provided new information that suggests that there ought to be further examination of the claim of actual innocence and probably the star information in this, if we put aside recantations because they have their own problems, is the testimony of Loretta Turner that was not provided to them and therefore not explored at trial, right? Well, Your Honor, there is... It wasn't in the record, right? There is no dispute at this point that Ms. Loretta Turner's evidence is new evidence at this point. That is not something that we argued at the briefing stage before this court and that is not something that we are arguing here that her evidence is not new, but rather it is new evidence that is cumulative and of little weight. Ms. Turner's testimony is limited by her ability to perceive the events that were happening at that market, Kirk's Market to be exact. Ms. Turner, whether she said that she didn't see them or that Mr. Lowery wasn't in the store, either one of those statements is limited by her ability to perceive the individuals that were in the store. Well, the struggle for that is doesn't the jury get to decide that? I mean, it's not a question of that the law says, well, we will come up here and we will examine the evidentiary evidence and make a decision on it. The question is who should have made the decision on that evidence? And clearly it would have been the jury and that didn't happen because it was not before them. I think the other thing that gives me pause is the decision below because looking at the message in your briefing, that there were discrepancies between the court's order and what actually the record said. The order was three pages long. Without recitation or citation to the record, I find that significantly concerning. So doesn't that place Mr. Lowery in the position of having to rebut a three-page, unreferenced decision of the court? And doesn't that make the new evidence he brings in stronger because the court decision below did not otherwise challenge that evidence? Your Honor, it does not make his case stronger. How does it play? How would you say it plays in the case that the only record before us is three-page, really unsighted, conclusory decision? Your Honor, it makes no difference in the analysis the fact that there was or was not citation or whether there was a certain number of words or pages in the court's order. What about the fact that some of the stuff in it was just plain wrong? Your Honor, anything that was in that order would have to be shown to be clearly erroneous by the petitioner. Now there are some slight discrepancies, but Your Honor, on the whole, this order is not something that was clearly erroneous. When we look at the order, the state court sitting in its Iroquois or Novus position stated that Mr. Boatwright struggled to explain how he was being threatened with a charge of murder when he was the individual being shot. And when we go back and we look at the Iroquois or Novus transcript, we see Mr. Boatwright saying, well, they were going to charge me with armed robbery, but then they told me they were going to charge me with murder. And he goes on and talks about the murder for three or four more sentences and how they were threatening to charge him with murder. And then two pages later in the transcript, he once again brings up that, well, they were going to threaten to charge me with murder. And when you look at the transcript and you look at the things that Mr. Boatwright was saying, it's pretty apparent from the transcript that there was a struggle occurring there, but something that we don't have at this point, but that the state court did have when they were making this determination. My understanding of the record from page 909 and 910 is that throughout the hearing, he said that the police threatened to charge him. And they threatened to charge him with Russell's murder. I don't understand how that's a discrepancy in his testimony. He was saying that his response to them, his decision to testify, his speaking was premised on the police threatening him with prosecution of some crime. Right? Yes, Your Honor, of some crime. But his explanation of what that crime was and how the police may have been pressing him on those things is undermined by his inability to clearly articulate how he was being threatened to be charged with murder when he, in fact, was one of the victims that was shot at the time of the shooting. Would he be any less charged if what they were going to charge him with was aggravated robbery? Well, Your Honor, it doesn't matter whether he would have been charged with... Yeah, because they could send him to jail for either of them, right? Well, yes, Your Honor, it could. But what the Iroquois and Novice Court is pointing out in their order was his ability to articulate these things and how they undermined the truthfulness of what he was saying at the Iroquois and Novice hearing. This is a credibility determination by the Iroquois and Novice Court, who is sitting in the hearing, observing these witnesses as they testified, looking at their body language, their eye contact, the pauses that they had in between the words that we cannot see in the transcript, the points in the transcript for Mr. Boatwright where there's an ellipsis that we don't know how much time transpired between the previous sentence and the next sentence that he said. The Iroquois and Novice Court had all of those things before it and could make a determination on their truthfulness based on those things that we cannot see from a cold record, which is the very purpose of 2254E1, which states that these factual determinations by the State Court are presumed correct unless rebutted by clear and convincing evidence. They have not been rebutted by clear and convincing evidence by the petitioner. They point to some slight inconsistencies in this order, yes, but those slight inconsistencies do not mean that Mr. Boatwright and Mr. Hardin were truthful in their recantations, and that's what petitioner would need to show in order to rebut these factual findings by the State Court. They have not been able to do so. As a matter of fact, these affidavits that they presented more than ten years ago, one in 2010 and one in 2012, are both suspect because they were acquired after, as Judge Kethledge mentioned earlier, an interaction with Mr. Lowery in prison. Now, they want to point out that, oh, well, if you look at the notary stamp on these two affidavits, they don't state Morgan County on them, which is where Mr. Lowery is being held, the Morgan County Correctional Complex. But a stamp by a notary is not an attestation of where that document was signed. A notary stamp is merely where that notary is registered as a notary, the county that they are registered in in Tennessee. At the top of both of those affidavits, it's... So is it your understanding that they were in the same jail at the time the affidavit was signed? Your Honor, when they signed those affidavits and attested to them, the top of that affidavit says that it was written in Morgan County, Tennessee. And when Malik Hardin and William Boatwright signed those affidavits, they attested under oath that they were in Morgan County, Tennessee, when they wrote those affidavits. Now, if they want to change their testimony once again on another thing in this case and say that, no, they weren't in Morgan County at that time, that once again weighs against their truthfulness. Connect that up with answering Judge Mathis's specific question, which was not which county are they in, but are they in the same facility? Currently, Your Honor, I don't know about the whereabouts of each individual and where they are being housed. We are more than 10 years away from when these affidavits occurred. You said this came after an encounter in prison, but as you stand here, you're not sure whether these things were attested to while they were in the same facility. Is that accurate? We know what their attestation was, and that is that they were in Morgan County Correctional Complex, according to their signature on those affidavits. So not just the county, the correctional complex now, you're saying. I'm just trying to understand what you're saying and what you're not saying. Yes, Your Honor. So yes and no are helpful, to be honest with you, in that regard. So are you saying, bottom line, they are in the same facility, both of them, when they do these affidavits, or are you not saying that? You're agnostic. Your Honor, I see that I'm out of time. May I continue and answer your question? Your Honor, my understanding is that the only state penitentiary where these individuals could be held in Morgan County is the Morgan County Correctional Complex. Therefore, when they attest that they were in Morgan County when making these affidavits, they would be in the Morgan County Correctional Complex with Mr. Lowery. All right. Very well. Okay, thank you for your argument. We'll hear rebuttal. Good afternoon, Your Honors. Brennan Bartley for Mr. John Lowery. May it please the Court. I want to begin by going to Judge Strange's questions about Ms. Turner and her testimony. Because the issue of her testimony being suppressed, it doesn't just speak to the credibility or reliability of her testimony. Because it's undisputed here that her testimony is reliable. But it goes to the weight of that testimony. The fact that that evidence was never turned over to Mr. Lowery strongly suggests that that evidence held significant weight. In fact, it's the sort of thing that there would be an adverse inference taken, for example, in a civil case, if such a thing like that happened. So here, it is strongly suggestive that contrary to what the state says now, that Ms. Turner's testimony would have little bearing, that it would actually have held significant weight for the jury. And we know that it would have held significant weight because of the way that the state dismissed Mr. Lowery's other witnesses. It dismissed them by saying, well, these are interested witnesses. They're friends with him. They know him well. They're related to him in some cases. But they couldn't do that with Ms. Turner. Ms. Turner's an unbiased witness who contradicts directly the trial testimony of Mr. Harden and Mr. Boatright. And this isn't just a situation where she contradicts some minor aspect of their testimony. The reason at trial that Mr. Boatright and Mr. Harden's testimony was so important was because they identified Mr. Lowery. But if those identifications are undercut, then that would force a jury to have reasonable doubt. And that's the standard here. The problem you have with Turner is that she's spending part of her time crouched behind the counter by her own testimony. Well, Your Honor, that's not really a problem for where Ms. Turner contradicts the testimony of Mr. Harden and Mr. Boatright. She does say she was behind the counter during the actual act of the shooting. But what she also says is that she was observing this supposed argument that occurred and that it wasn't Mr. Lowery who was arguing with Mr. Boatright. Now, that directly contradicts both Mr. Harden and Mr. Boatright. And while it may be theoretically possible that Mr. Harden and Mr. Boatright at trial correctly identified Mr. Lowery as the shooter, but incorrectly identified him as the person that Mr. Boatright argued with, that's reasonable doubt. A reasonable juror, properly instructed, would have to reach the conclusion that there is reasonable doubt in this case. And that's the standard here. It's what a reasonable juror would do. You need every reasonable juror. I mean, this is like the second toughest standard known to habeas cases. I mean, the only tougher one is the statutory one where you have to make the same showing by clear and convincing. But you have to show by preponderance that every reasonable juror would find reasonable doubt here. And you've got two, I mean, I'll just lay it out. You've got two witnesses who may or may not have been driving Mr. Lowery's car who identify him as the shooter, one of whom himself got hit, and whose recantations come many years later when they're both in the same facility. So, I mean, it's hard to see how that would compel every reasonable juror to have doubts about Mr. Lowery's guilt. Just to be, you know, straight about at least my biggest concern regarding your argument. So here's why it would compel every reasonable juror to have reasonable doubt as to Mr. Lowery's guilt. First, there's Ms. Turner's testimony. She directly contradicts at least half of their identifications of Mr. Lowery that morning. There's no one contradicting her. Second, there's the unrebutted evidence of police coercion that gives a reason for the jury to doubt the initial identifications. That's something that at trial, Mr. Lowery's attorney conceded he couldn't think of a reason for Mr. Harden and Mr. Boatwright to give wrong testimony. Third, there's the fact that Mr. Harden and Mr. Boatwright recanted and say that that was not Mr. Lowery who was the shooter. They were at some point incarcerated in the same facility with Mr. Lowery, and these are many years later. But I'd invite the court to take a look at Schlupp, which involved the canonical case here, involves incarcerated witnesses who either recanted or newly came forward, people who were incarcerated in the same facility as the petitioner, even in a case where there were unrecanted eyewitness identifications of the defendant as the I'd also invite the court to look at Cleveland versus Bradshaw, which, like this case, involved a recantation many years later. But unlike this case, involved a recantation that went only to the point of an affidavit and was never tested on cross-examination. Right. There was no credibility determinations there in Cleveland, right? Could you say that again, Your Honor? There were no credibility determinations in Cleveland by any court, right? Your Honor, I believe that in Cleveland there were determinations of credibility, specifically that the recanting affidavit was not credible, both by a state court and by the lower district court. And this court came in and said that was incorrect. Testimony before a hearing, a hearing testimony. I know there was an affidavit, but they didn't come and testify in court, right? No, that's the problem. The affidavit there did not come testify in court. Here, Mr. Boatwright and Mr. Harden did, were tested, and weren't contradicted by the state. All right. Well, thank you for your argument. I will say, since this is presumably the first argument for both of you, I do want to thank you for your excellent representation of your client here. I know you're appointed pursuant to the Criminal Justice Act. Very vigorous and extremely well prepared, both of you. So we thank you for that. You know, the first time I ever cross-examined a witness, everyone in the courtroom at the same instant yelled, speak up. And so, Mr. Bartlett, I want to say, I mean, you've got just a natural trial voice, I'll tell you. You don't need the microphone, and you're not going to have some of the problems that I encountered earlier. Thank you, Judge. I thank you both.